IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JERMAINE ALONZO SCOTT        :
                             :        CIVIL ACTION
          v.                 :
                             :        NO. 09-1081
RAYMOND J. SOBINA, ET AL.    :

**SURRICK, J.**                              **DECEMBER  16 , 2011**

## MEMORANDUM

Presently before the Court are Petitioner Jermaine Alonzo Scott's Petition for Writ of

Habeas Corpus (ECF No. 1), the Report and Recommendation of United States Magistrate Judge

Timothy R. Rice (ECF No. 30), and Petitioner's Objections thereto (ECF No. 31).  For the

following reasons, the Objections will be overruled and the Petition will be dismissed.

## I.    BACKGROUND

Petitioner was charged with attempted murder, murder, possession of an instrument of

crime, criminal conspiracy, and two counts of robbery, all in connection with an incident in the

parking lot of a Philadelphia night club on April 26, 2000.  *Commonwealth v. Scott*, No. 0010-

0101 3/5 (Pa. Ct. Com. Pl. Jan. 21, 2003) ("Trial Ct. Op.").  The Commonwealth tried Petitioner

jointly with three co-defendants.  Two of Petitioner's co-defendants, Lawrence Smith and

Aldaberto Corredor, were simultaneously tried for another incident at the same Philadelphia

night club that had occurred on February 2, 2000.  Over the course of a nine-week jury trial,

Petitioner's counsel, Michael Wallace, argued that Petitioner did not have a weapon, that he was

mistakenly identified, and that his presence at the scene of a crime could not itself establish guilt.

(Report and Recommendation 5-7 (citing trial transcript), ECF No. 30.)  The jury convicted

Petitioner of conspiracy and two counts of robbery, but not the remaining charges.  (Trial Ct.

Op. 1.)  Petitioner was sentenced to three consecutive terms of four to ten years' imprisonment.[1]

The Superior Court affirmed Petitioner's sentence, *Commonwealth v. Scott*, 852 A.2d 1254 (Pa. Super. Ct. 2004),[2] and the Pennsylvania Supreme Court denied his petition for allowance of appeal, *Commonwealth v. Scott*, 857 A.2d 678 (Pa. 2006).  On October 16, 2006, Petitioner filed a counseled petition for relief under the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541 *et seq.*  The judge in the PCRA proceedings was the same judge that presided at the trial.  The PCRA court dismissed the petition as meritless. *Commonwealth v. Scott*, No. 2576 EDA 2007 (Pa. Ct. Com. Pl. Nov. 29, 2007) ("PCRA Ct. Op.").  The Superior Court affirmed. *Commonwealth v. Scott*, No. 2576 EDA 2007 (Pa. Super. Ct. Aug. 1, 2008) ("PCRA Super. Ct. Op.").  On March 11, 2009, Petitioner filed the instant Petition for Writ of Habeas Corpus, which alleges seventeen claims of ineffective assistance of counsel.[3]  (Pet., ECF No. 1.)  After oral argument, (Oral Arg. Tr., ECF No. 25), Magistrate Judge

---

[1] For a detailed discussion of the factual background of the incident giving rise to the charges against Petitioner, and the trial, see the comprehensive 55-page Report and Recommendation prepared by Magistrate Judge Rice. (ECF No. 30.)

[2] Several state court documents misspell Petitioner's last name, which is Scott, not Scotts.

[3] Specifically, Petitioner alleges that trial counsel was ineffective for: (1) failing to meet with Petitioner to prepare for trial; (2) failing to conduct an adequate pretrial investigation; (3) failing to challenge the underrepresentation of African-Americans in the jury pool; (4) failing to object to the discriminatory use of peremptory challenges; (5) intoxication throughout trial; (6) failing to raise hearsay and confrontation clause objections; (7) failing to object to improper juror contacts; (8) inadequate cross-examinations; (9) failing to raise the issue of sleeping jurors; (10) failing to adequately assert a mistaken identity defense; (11) failing to object to the prosecutor's closing argument; (12) failing to review the presentence report with Petitioner; (13) failing to prepare for the sentencing hearing; (14) failing to argue for concurrent sentences; (15) failing to object to non-compliance with well-settled sentencing laws; and (16) failing to appeal Petitioner's sentence.  (Petition 4-7.)  Petitioner alleges in his seventeenth claim that his due process rights were violated because of counsel's cumulative errors.

Rice issued the Report and Recommendation, recommending that all of Petitioner's claims for relief be denied.  (ECF No. 30.)  Petitioner filed seventeen Objections to the Report.  (Objections, ECF No. 31.)  Petitioner also submitted two supplements to his memorandum.  (ECF Nos. 33, 35.)

## II.    LEGAL STANDARD

Absent exceptional circumstances, a state prisoner is required to exhaust all avenues of state review prior to filing a petition for federal habeas review.  28 U.S.C. § 2254(b)(1); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999).  The Antiterrorism and Effective Death Penalty Act ("AEDPA") precludes habeas relief on a "claim that was adjudicated on the merits in State court proceedings" unless the petitioner demonstrates that the state court proceedings (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Saranchak v. Beard*, 616 F.3d 292, 301 (3d Cir. 2010).  We review *de novo* those portions of the Report and Recommendation to which specific objections have been made.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3).

## III.    DISCUSSION

Magistrate Judge Rice's Report and Recommendation very competently addresses, and disposes of, all seventeen claims in the Petition.  We agree with all of the findings of Magistrate Judge Rice and the reasons given for those findings.  In his Objections to the Report, Petitioner disputes every finding made by Magistrate Judge Rice.  Most of Petitioner's Objections raise no

new substantive arguments, but instead, simply repeat his previous arguments.  We have reviewed *de novo* the findings and recommendations of Magistrate Judge Rice to which objections have been made, and we are compelled to conclude that the findings and recommendations are correct and should be accepted.  Accordingly, Petitioner's Objections will be overruled.

### A.      Procedurally Defaulted Claims

Two of Petitioner's claims for relief are procedurally defaulted.  Petitioner alleges that his counsel was ineffective for (1) failing to object to the trial court's non-compliance with well-settled sentencing laws and (2) failing to appeal his sentence.  (Pet. 9.)  Petitioner concedes that he raised these issues for the first time in his state court motion for reconsideration, dated September 17, 2007.[4]  (Objections 28, 30.)  The PCRA court issued an order denying Petitioner's petition for relief on September 21, 2007.  *Commonwealth v. Scott*, CP0010-0101 3/5 (Pa. Ct. Com. Pl. Sept. 21, 2007).  Petitioner filed his petition on October 16, 2006, but raised these two additional claims almost a year later, just four days before the PCRA court rendered its decision.  Petitioner procedurally defaulted on these claims because they were not timely presented to the state court.

Petitioner's only response in his Objections is that these claims were made "as soon as feasible."  (Objections 30.)  This assertion alone does not "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*,

---

[4] There is a dispute as to whether Petitioner even raised his non-compliance with sentencing laws argument in his motion for reconsideration.  For purposes of the instant Petition, we will assume that he did.

4

501 U.S. 722, 750 (1991).  Accordingly, these claims are dismissed.

**B.      Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, Petitioner must establish that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  For AEDPA purposes, this two-pronged test enunciated in *Strickland* qualifies as "clearly established Federal law, as determined by the Supreme Court." *Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010).  Counsel's performance was deficient if the "representation fell below an objective standard of reasonableness." *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000) (quoting *Strickland*, 466 U.S. at 688).  To demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 391 (quoting *Strickland*, 466 U.S. at 694).  *Strickland* mandates a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  466 U.S. at 689; *Jacobs v. Horn*, 395 F.3d 92, 118 (3d Cir. 2005).

In *United States v. Cronic*, 466 U.S. 648 (1984), decided the same day as *Strickland*, the Supreme Court held that there are situations where the ineffectiveness of counsel "is properly presumed without inquiry into actual performance at trial." *Id.* at 661.  A presumption of prejudice is appropriate where (1) the accused is denied counsel at a critical stage of the trial, (2) counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, or (3) although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is small under the circumstances. *Id.* at 659-60; *Bell v. Cone*, 535 U.S. 685, 695-96 (2002).  The Supreme Court has described

5

*Cronic* as a "narrow exception" to *Strickland* that should be applied "infrequently." *Florida v. Nixon*, 543 U.S. 175, 190 (2004). To successfully invoke the presumption of prejudice, counsel's "failure must be complete." *Bell*, 535 U.S. at 697.

The difference between *Strickland* and *Cronic* "is not of degree but of kind." *Id.* Although both doctrines address the adequacy of counsel's performance, *Strickland* contemplates claims of "bad lawyering," *i.e.*, ineffective assistance of counsel, and *Cronic* contemplates claims of "no lawyering," *i.e.*, denial of counsel. *See Woodard v. Collins*, 898 F.2d 1027, 1028 (5th Cir. 1990); *see also United States v. Theodore*, 468 F.3d 52, 56-57 (1st Cir. 2006) (refusing to apply *Cronic* where the representation suffered significant deficiencies, but was "not tantamount to non-representation"). If *Strickland* applies, a defendant must demonstrate specific errors committed by trial counsel that prejudiced the outcome of the trial. If a claim is governed by *Cronic*, a defendant does not need to show prejudice resulting from counsel's deficient performance. *Mitchell v. Mason*, 325 F.3d 732, 741-42 (6th Cir. 2003). The Third Circuit has recognized that the "majority of Sixth Amendment right to counsel cases are, and should be, analyzed under the ineffective assistance standard of *Strickland*." *Appel v. Horn*, 250 F.3d 203, 214 (3d Cir. 2001); *see United States v. Gambino*, 788 F.2d 938, 950 n.17 (3d Cir. 1986) (finding that *Cronic* applies in "particularly egregious circumstances").

### 1. Insufficient Contacts

Petitioner alleges that his trial counsel, Michael Wallace, was ineffective because he failed to maintain sufficient contacts with Petitioner prior to trial. Petitioner was incarcerated from April 26, 2000, the date of his arrest, until his trial began in December 2001. (Pet'r's Mem. 13 (on file with Court); Oral Arg. Tr. 19, 83.) Petitioner states in an affidavit that despite his

numerous requests for Wallace to visit him in prison to discuss the trial, Wallace came once, and only to discuss a plea offer.  (Pet'r's Mem. Ex. P-2.)  The only other time Petitioner saw Wallace before his trial was at a lineup.  (*Id.*)  To substantiate his allegations, Petitioner submits his inmate visitors log, which does not identify any visits from Wallace.[5]  (*Id.* Ex. P-4.)  Petitioner also submits a letter that he wrote to Wallace while incarcerated that shows that his requests for pre-trial consultations had been ignored.[6]  (*Id.* Ex. P-3.)

Petitioner's argument to the PCRA court focused on *Strickland*.  (PCRA Pet. 14 ("Each of trial counsel's errors and omissions . . . prejudiced petitioner." (on file with Court)).)  Petitioner never cited *Cronic* in the briefs to the PCRA court.[7]  Petitioner admitted that when evaluating an ineffective-assistance claim, the "length of time counsel engaged in conversations with his client is only one factor."  (Pet'r's PCRA Reply 14 (on file with Court).)  He argued, however, that "one would have to conclude that at some point a *per se* rule is warranted."  (*Id.*)  Petitioner also relied on *Commonwealth v. Brooks*, 839 A.2d 245 (Pa. 2003), for the proposition that counsel and client must have at least "one in-person meeting" before trial begins.  *Id.* at 249.

The PCRA court and the Superior Court rejected Petitioner's insufficient-contacts

---

[5] Petitioner was incarcerated immediately after his arrest on April 26, 2000.  The visitors log appears to cover visits from December 28, 2000 through April 22, 2002.  (Pet'r's Mem. Ex. P-4.)  We will nevertheless proceed on the assumption that Wallace never visited Petitioner to discuss trial.

[6] On December 31, 2000, Petitioner wrote, "I have a lot of questions that needs [sic] to be answered.  I've been here for about 9 months an [sic] only seen you once, I call your office all the time but your [sic] always gone.  I really need to see you so we can discuss my case."  (Pet'r's Mem. Ex. P-3.)

[7] Significantly, Petitioner's counsel acknowledged at oral argument before Judge Rice that he "found some language in the leading case defining *per se* prejudice" and that he "originally didn't appreciate and understand the significance of" *Cronic*.  (Oral Arg. Tr. 34.)

argument.  The Superior Court distinguished *Brooks* and found that Petitioner had failed to

demonstrate prejudice, in part, because he had not been convicted of murder or attempted

murder.  (PCRA Super. Ct. Op. 7-8.)  Since Petitioner based his argument on *Strickland*, the state

courts required Petitioner to demonstrate prejudice.

      In his report, Magistrate Judge Rice found, and we agree, that the state courts' decisions

were not contrary to, nor an unreasonable application of, *Strickland*.  (Report 30.)  Assuming that

*Brooks* provides the *per se* client-counsel contact rule that Petitioner suggests, the AEDPA

provides for habeas relief where the state proceedings violated "clearly established Federal law,

as determined by the Supreme Court of the United States."  *Strickland*, not *Brooks*, is the

governing federal law. Accordingly, Magistrate Judge Rice required Petitioner to show prejudice.

      The trial transcript establishes that Wallace objected to prejudicial evidence, asserted

valid defenses, conducted cross-examination, and gave a closing argument.  (Report 30 (citing

transcript).)  At oral argument, Magistrate Judge Rice asked Petitioner's counsel to identify

specific prejudices suffered by Petitioner at trial.  Counsel responded that if Wallace had

interviewed Petitioner, he would have learned about weaknesses in the government's argument,

parts of which attributed a gun to Petitioner.  (Oral Arg. Tr. 27-28.)  However, Wallace did

emphasize that Petitioner was never found with a gun (State Trial Tr. 156, ECF No. 19), and

more importantly, the jury did not convict him of the gun charge, attempted murder, or murder.

      We certainly do not want to encourage lawyers to fail to meet with a client prior to trial to

discuss trial preparation.  We agree with the Pennsylvania Supreme Court that without meetings

between counsel and client, "there is little to no hope that the client will develop a fundamental

base of communication with his attorney, such that the client will freely share important

8

information and work comfortably with the lawyer in developing a defense plan." *Brooks*, 839 A.2d at 249.  However, we cannot conclude under these circumstances that the state courts unreasonably applied *Strickland*.

Petitioner argues that Wallace's failure to meet with him entitles him to a presumption of prejudice under *Cronic*.  (Objections 1-8.)  Petitioner maintains he was constructively denied the presence of counsel and that his case fits squarely within the third exception identified in *Cronic*. (*Id.* at 3 (citing *Cronic*, 466 U.S. at 659-60 ("[A]lthough counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.")).)  As noted above, however, Petitioner relied on *Strickland*, not *Cronic*, before the state courts.

*Strickland* and *Cronic* are distinct legal theories that require different types of analyses. *See Appel*, 250 F.3d at 210 ("The two claims, of course, are different.").  For a claim to be exhausted, "[b]oth the legal theory and the facts underpinning the federal claim must have been presented to the state courts."  *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992).  In his state court briefs, Petitioner made reference to the notion that at "some point a *per se* rule is warranted" based on the lack of client-counsel contacts, but he relied on cases that evaluated prejudice.  Rather than citing *Cronic* and its creation of a presumption of prejudice, this passing reference to a *per se* rule suggests an expansion of *Strickland*.  Petitioner's *Cronic* argument is unexhausted because he did not fairly present it to the state courts.  We are, therefore, precluded from granting him relief on this legal theory.  *See Fusi v. O'Brien*, 621 F.3d 1, 6-7 (1st Cir. 2010) (finding *Cronic* claim unexhausted where petitioner only raised *Strickland*

claim in state courts); *Huntley v. McGrath*, 261 F. App'x 4, 6 (9th Cir. 2007) (same).

In any event, even if we were to reach the merits of Petitioner's argument, he is still not entitled to the relief that he requests. *Cronic* is reserved for those rare cases in which a defendant is either actually or constructively denied counsel. In *Cronic*, the court appointed a young real estate lawyer with no criminal law experience to serve as defense counsel in a complex federal mail fraud trial. 466 U.S. at 649-50. Appointed counsel had only 25 days to prepare for the trial, even though the government had investigated and prepared its case for four and a half years. *Cronic* identified three situations that warrant a presumption of prejudice, but found none of them governed the facts before the court. *Id.* at 663. Instead, the defendant had to show prejudice. *Id.* at 666 n.41.

The Supreme Court has consistently emphasized that *Cronic* is a narrow exception to the *Strickland* rule. *See, e.g.*, *Nixon*, 543 U.S. at 178-79 (refusing to apply *Cronic* where defense counsel conceded defendant's guilt at trial without defendant's consent); *Bell*, 535 U.S. at 697-98 (refusing to apply *Cronic* where defense counsel failed to adduce mitigating evidence and waived closing argument). The Third Circuit has described the circumstances that justify a presumption of prejudice as "very rare," *Vance v. Lehman*, 64 F.3d 119, 122 (3d Cir. 1995), and has confined *Cronic* to those cases where the "denial of counsel would necessarily undermine the reliability of the entire criminal proceeding," *Ditch v. Grace*, 479 F.3d 249, 255 (3d Cir. 2007). *See, e.g.*, *Jackson v. Carroll*, 161 F. App'x 190, 193 (3d Cir. 2005) (refusing to presume prejudice where trial counsel was appointed sixteen days before capital case); *Appel*, 250 F.3d at 206, 215-16 (applying *Cronic* where appointed counsel, under the assumption that they were no longer serving as counsel, never conducted any investigation prior to hearing).

Based upon the record in this case, we cannot conclude that the failure of trial counsel to have multiple visits with Petitioner was equivalent to a "complete failure of counsel." *See Jackson*, 161 F. App'x at 193.  As discussed above, a reading of the trial transcript demonstrates that Wallace reviewed relevant documents, asserted defenses, objected to prejudicial evidence, cross-examined witnesses, and gave a compelling closing argument.  In short, Wallace obviously did more than a trivial amount of preparation for this trial.  Moreover, Wallace hired a private investigator to facilitate his pretrial efforts.  (Pet'r's Mem. Ex. P-6.)  Wallace's conduct at trial must have impressed the jury to the extent that Petitioner was not convicted of possession of a weapon, attempted murder, or murder.  Petitioner alleges a number of instances of deficient advocacy in his remaining grounds for relief, but each of these claims is properly analyzed under *Strickland*.  Even if we assume that Wallace's preparation was below an objective standard of reasonableness, *see Fusi*, 621 F.3d at 9, Petitioner is not entitled to a presumption of prejudice because he was not actually or constructively denied counsel.

Petitioner relies heavily on one case that applied *Cronic* to facts that he argues are similar to those in the instant case.  *See Mitchell v. Mason*, 325 F.3d 732 (6th Cir. 2003).  In *Mitchell*, the defense counsel in a capital case conferred with his client for only six minutes prior to trial, ignored requests for consultation, was suspended from the practice of law for the month immediately preceding trial, did not contact or interview known material witnesses, failed to give an opening argument, and did not present any witnesses.  *Id.* at 735, 742.  Despite having notice, appointed counsel did not appear at a hearing on the defendant's motion for new counsel.  *Id.* at 736.  The Sixth Circuit determined that defendant did not have to demonstrate actual prejudice because counsel was "utterly absent" during the pretrial stages.  *Id.* at 748.  Petitioner's reliance

11

on *Mitchell* is misplaced.  One can argue that Wallace's trial preparation was lacking, but it was significantly better than that in *Mitchell*.

For all of these reasons, even if Petitioner had exhausted his *Cronic* argument, he has still not demonstrated a complete failure of counsel.

>    2.    *Pretrial Investigation*

The remaining claims in the Petition are all based on specific errors committed by Wallace that allegedly prejudiced Petitioner.  We will address these claims under the *Strickland* framework.

Petitioner asserts that Wallace failed to conduct an adequate pretrial investigation. Petitioner first submits the investigation interview record of Kirke Szawronski, dated February 27, 2000.  (Pet'r's Mem. Ex. P-8.)  Although Szawronski was not present at the club for either the February or April killings, Petitioner argues that Wallace failed to sufficiently investigate this report.  The PCRA court dismissed Petitioner's argument because Petitioner did not submit an affidavit from Szawronski advising that he was willing to testify, Szawronski's statements regarding what he had "heard" were hearsay, and the interview occurred two months before the incident at the club for which Petitioner was convicted.  (PCRA Ct. Op. 7-9.)  The PCRA court's determination was reasonable.

Petitioner also argues that Wallace failed to pursue an investigation stemming from an April 26, 2000 interview with Mariano Corredor, the brother of one of Petitioner's co-defendants.  (Pet'r's Mem. Ex. P-9.)  Mariano Corredor stated that another co-defendant, Lawrence Smith, had a gun on the morning of April 26 and later hid the gun near a bar in New Jersey.  (*Id.*)  The PCRA court evaluated this interview under the mistaken belief that it occurred

prior to the April 26, 2000 incident.  (PCRA Ct. Op. 9.)  In fact, the interview took place the day

of the killing.  In any event, the Petitioner has failed to show actual prejudice.  Whether pursuing

this interview further would have borne fruit or not, Petitioner was not convicted of any gun-

related charge and he acknowledges that "numerous witnesses at trial, including one arresting

officer, testif[ied] affirmatively that petitioner did not have a gun."  (Pet'r's Mem. 24.)

　　　　Petitioner argues that Wallace's "total abdication" of his responsibility to conduct a

pretrial investigation entitles him to a presumption of prejudice under *Cronic*.  (Pet'r's Mem. 25-

27; Objections 12-13.)  Petitioner maintains that Wallace relied entirely upon a private

investigator to prepare for this case and that Wallace had an obligation to personally conduct his

pretrial investigation.  We are aware of no authority that supports this position.  Moreover, we

have already determined that even if Wallace's trial preparation was lacking, Petitioner has not

demonstrated that he was constructively denied counsel.

　　　　　　3.　　*Jury Pool*

　　　　Petitioner is an African-American.  Petitioner alleges that Wallace was ineffective for

failing to challenge the underrepresentation of African-Americans in the jury pool.  The state

courts rejected this argument because Petitioner did not show that the "procedures as designed or

implemented are likely to result in juries unrepresentative of a cross-section of the community, or

that the procedures have continually failed to represent certain identifiable groups over a period

of time."  (PCRA Ct. Op. 10.)  This ruling was not contrary to, nor an unreasonable application

of Supreme Court precedent.

　　　　Petitioner argues in his Objections that he did cite an article that demonstrates systemic

underrepresentation in jury pools in Philadelphia.  (Pet'r's Mem. 28.)  However, the *Philadelphia*

*Inquirer* article that he identifies in his federal habeas memorandum was written after the PCRA

court issued its opinion.  It was not properly before the Court.  *See Evans*, 959 F.2d at 1231

(exhaustion requires that the "facts underpinning the federal claim must have been presented to

the state courts").  Petitioner's argument is without merit.

> 4.     *Peremptory Challenges*

Petitioner alleges that Wallace was ineffective for failing to challenge the prosecutor's

discriminatory use of peremptory challenges during jury selection.  *See Batson v. Kentucky*, 476

U.S. 79 (1986).  The PCRA court found that a "review of the record in the instant case shows

that in the 12 days of *voir dire*, consisting of 616 potential jurors, the prosecutor had race-neutral

reasons for striking all of the 16 complained-of venire persons."  Moreover, the PCRA Court

found that the final jury was composed of seven African-Americans, four Caucasians and one

"other".  (PCRA Ct. Op. 11-12 (citing transcript).)  These factual findings are presumptively

correct, and Petitioner has not presented clear and convincing evidence to rebut this presumption.

*See* 28 U.S.C. § 2254(e)(1).

Petitioner argues in his Objections that the findings of the state court are not entitled to

deference because *Batson* claims are "a mixed question of law and fact."  (Objections 15

(quoting *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003)).)  Petitioner's contention is

without merit.  *See Rico v. Leftridge-Byrd*, 340 F.3d 178, 181 (3d Cir. 2003) (ruling that a state

court's finding of the absence of discriminatory intent is a "pure issue of fact accorded significant

deference"); *Coombs v. DiGuglielmo*, No. 04-1841, 2005 WL 6105391, at *3 (E.D. Pa. June 15,

2005) ("A state court's finding regarding a *Batson* claim is a finding of fact accorded great

deference.").

14

### 5.    Attorney Intoxication

Petitioner alleges that Wallace was intoxicated throughout the trial.  Petitioner supports this ineffective-assistance argument by submitting affidavits from his family members.  The PCRA court dismissed this claim as meritless and found the affidavits biased.  (PCRA Ct. Op. 12-13.)  Moreover, the judge in the PCRA proceedings, who was also the trial judge, found that trial counsel was not intoxicated.  Petitioner has failed to rebut the state court's factual findings which are entitled to deference.  *See* 28 U.S.C. § 2254(e)(1).  Accordingly, this claim must be dismissed.

### 6.    Failure to Object to Cartoon

Petitioner alleges that Wallace was ineffective for failing to object to a "highly inflammatory gory cartoon-like drawing." (Petition 7.)  The PCRA court noted that the cartoon was introduced as an admission against Petitioner's co-defendant, not Petitioner, and the trial court issued a limiting instruction cautioning the jury to consider the evidence only against the co-defendant.  (PCRA Ct. Op. 6.)  The cartoon was neither hearsay nor a violation of the Confrontation Clause.  Petitioner has failed to demonstrate how  the state courts' determinations were contrary to, or an unreasonable application of, federal law.

### 7.    Improper Contacts and Sleeping Jurors

Petitioner alleges that Wallace failed to notify the trial court that the prosecutor and members of the victims' families had improper contacts with the jury.  Petitioner also alleges that Wallace failed to inform the court that numerous jurors were sleeping throughout the trial.  The PCRA court rejected both of these claims.  Petitioner submitted affidavits from his family members, not disinterested witnesses, in support of these claims.  The PCRA court found no

evidence of improper conduct.  (PCRA Ct. Op. 13-14.)  We credit the state court's factual

determinations on these claims.  Since Petitioner fails to present clear and convincing evidence to

support his arguments, *see* 28 U.S.C. § 2254(e)(1), these claims must be dismissed.

8.    *Ineffective Cross-Examination*

Petitioner contends that Wallace's cross-examinations were ineffective.  Specifically,

Petitioner alleges that Wallace failed to cross-examine a witness's statement that co-defendant

Smith, not Petitioner, possessed a weapon on the morning of the crime, failed to cross-examine

law enforcement about conducting a gun-powder residue test, and failed to cross-examine a

witness about the victim's possession of $1,500 when he was robbed.  (Pet'r's Mem. 47-51.)

The PCRA court rejected each of these arguments.  These determinations by the state court were

not contrary to or unreasonable applications of federal law.

The only point raised by Petitioner in his Objections that was not covered by the PCRA

court or the Report relates to the failure to cross-examine the witness's statement about the

possession of a weapon.  The PCRA court ruled that the statement was hearsay because the

speaker, Mariano Corredor, did not testify.  (PCRA Ct. Op. 15.)  Petitioner concedes that the

statement was hearsay but argues that it should have been used to impeach Commonwealth

witnesses.  (Objections 20-21.)  Although Petitioner is correct that hearsay statements may

sometimes be introduced to impeach a witness, we disagree with his conclusion that the failure to

impeach rose to the level of a Sixth Amendment violation under these circumstances.  Petitioner

was not convicted of any gun-related charges and he has failed to show any prejudice under

*Strickland*.  Petitioner's argument that the jury may have reached a "compromise verdict" is too

speculative, to provide the basis for his requested relief.

16

9.      *Mistaken Identity Defense*

Petitioner argues that Wallace failed to adequately assert a mistaken identity defense. The PCRA court rejected this argument because Wallace did, in fact, argue that there was another person, Andre Page, who matched the description of the assailant.  (PCRA Ct. Op. 15-16.)  The state court's findings were not contrary to, nor an unreasonable application of, *Strickland.*  Wallace reasonably made a strategic choice as to his presentation of this defense. Petitioner's claim is without merit.

10.      *Prosecutor's Closing Argument*

Petitioner alleges that Wallace was ineffective for failing to object to the prosecutor's closing argument, which attributed a weapon to Petitioner.  The PCRA court found that the statements made by the prosecutor were consistent with the evidence adduced at trial.  (PCRA Ct. Op. 16-17.)  This conclusion is not objectively unreasonable.  After evaluating the prosecutor's statements in the context of the entire trial, we cannot conclude that the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Walker v. Palakovich*, 280 F. App'x 212, 215 (3d Cir. 2008) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

11.      *Presentence Report and Failure to Prepare for Sentencing*

Petitioner alleges that Wallace failed to review the presentence report, which contained inaccuracies regarding Petitioner's criminal record, drug use, and employment history.  Petitioner also alleges that Wallace did not prepare for sentencing.  The PCRA court acknowledged that the presentence report did have errors, but specifically found that the trial court did not base its sentencing on the report.  (PCRA Ct. Op. 20.)  Moreover, Petitioner's mother, cousin, and

17

girlfriend testified at the hearing, and Wallace submitted letters from Petitioner's friends and family.  There is ample evidentiary support to justify the PCRA court's conclusion that Petitioner was not prejudiced by mistakes in the presentence report or counsel's alleged lack of preparation. Accordingly, these claims must be dismissed.

> ### 12.   Concurrent Sentences

Petitioner maintains that Wallace was ineffective for failing to argue for concurrent sentences.  As noted earlier, the trial court imposed consecutive sentences on Petitioner.  The PCRA court rejected Petitioner's argument because the trial court had statutory authorization for the imposed sentence.  (PCRA Ct. Op. 21-23.)  This conclusion is not objectively unreasonable.

> ### 13.   Cumulative Errors

Petitioner argues that he is entitled to relief because the cumulative effect of the alleged errors undermined the fundamental fairness of his trial.  The PCRA court rejected this argument because it found that none of Petitioner's individual claims had merit.  We are satisfied that the state court's findings are not unreasonable where, as here, each underlying claim is dismissed as meritless or procedurally defaulted.

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's Objections will be overruled, the Report and Recommendation will be adopted, and the Petition for Writ of Habeas Corpus will be dismissed..

An appropriate Order follows.

BY THE COURT:


/s/   *R. BARCLAY SURRICK, J.*